UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                       :

SAINSLOT BELIZAIRE,                      :
                   Plaintiff,    :
                        :         12-CV-8268 (JPO)
       -v-                 :
                        :      <u>OPINION AND ORDER</u>
RAV INVESTIGATIVE AND SECURITY   :
SERVICES, LTD.,                  :
                   Defendant.  :
                        :
-----------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      On April 14, 2015, this Court directed entry of default judgment in the amount of

$65,859.55 against Defendant RAV Investigative and Security Services Ltd. ("RAV") and in

favor of *pro se* Plaintiff Sainslot Belizaire. (Dkt. No. 35.)  Now, pursuant to Federal Rule of

Civil Procedure 60(b)(1), RAV asks the court to set aside that judgment. (Dkt. No. 42.)  For the

reasons that follow, RAV's motion is denied.

## I.    Background

      For present purposes, the following summary of the case will suffice.[1]  According to the

complaint, Belizaire worked as a security guard for RAV from January 14, 2009, until his

termination on January 2, 2012.  (*See* Dkt. No 2 ("Compl.") 8-9.[2])  Among other claims,

Belizaire alleges that RAV routinely delayed paying him, paid him with bounced checks, and

paid him with checks that were not in the correct amount.  (*Id.* at 8.)  After Belizaire reported

these violations to the Department of Labor and asked RAV to pay him using certified checks,

---

[1] A more thorough discussion of the factual and procedural history of this matter can be found in
Judge Freeman's October 16, 2014 Report and Recommendation.  (*See* Dkt. No. 29, "R. & R.")

[2] Where documents, including the complaint, are not uniformly paginated, page numbers are
cited in the order they appear as filed on the docket via the Court's electronic case filing system.

Belizaire was fired.  (*Id.* at 3, 8-9.)  As the oldest of RAV's employees and the only employee of Haitian origin at his work site, Belizaire "never saw [another employee] treated in the same manner."  (*Id.* at 9.)

Following his termination, Belizaire filed a charge with the New York State Division of Human Rights and, through that agency, the U.S. Equal Employment Opportunity Commission ("EEOC").  (R. & R. 3-4.)  On September 28, 2012, the EEOC informed Belizaire that its investigation had closed and notified him of his right to sue in federal court.  (Compl. 5.)

Belizaire commenced this action by filing a complaint on November 8, 2012, alleging that RAV discriminated against him based on his age and national origin and retaliated against him for filing employment-related complaints, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; and the New York State Human Rights Law ("HRL"), N.Y. Exec. L. § 290 *et seq.*  (Compl. 1, 8-9.)

Service of Belizaire's *pro se* complaint was effected on RAV by the U.S. Marshals Service on April 5, 2013.  (Dkt. No. 9.)  As a result, RAV's answer was due on April 26, 2013. (*Id.*)  Following RAV's failure to file an answer or otherwise appear in the proceeding, Belizaire moved for default judgment on May 10, 2013.  (Dkt. No. 12.)  Belizaire's motion included an "Affirmation of Service" declaring that a copy of the notice of motion of default judgment had been served upon RAV.  (Dkt. No. 12 at 18.)

The Court directed entry of default judgement in favor of Belizaire and against RAV and referred the matter to Magistrate Judge Debra C. Freeman for an inquest on damages.  (Dkt. No. 13.)  As part of the inquest, Judge Freeman issued an order directing Belizaire to file and serve on RAV his proposed findings of fact and conclusions of law concerning damages.  (Dkt. No. 16

¶ 1.)  A copy of this order was mailed to RAV.  (*Id.* at 2.)  On August 29, 2013, Belizaire submitted an affirmation declaring that his affidavit of proposed findings had been served on RAV.  (Dkt. No. 18.).

On February 28, 2014, Judge Freeman issued an order announcing an evidentiary hearing on the subject of damages.  (Dkt. No. 23, "Scheduling Order.")  A copy of that order, which invited RAV's attendance, was mailed by the Court to RAV.  (*Id.* at 2.)  RAV did not appear at the evidentiary hearing.  (Dkt. No. 27, n.1.)  In a subsequent order, Judge Freeman acknowledged that the scheduling order may have been "mailed to an incorrect address," and directed RAV to notify the Court within three weeks if it wished to be heard on the subject of damages.  (*Id.*)  A copy of that order was mailed to RAV.  (*Id.* at 5.)

On October 16, 2014, Judge Freeman issued the Report and Recommendation on Belizaire's claims.  In her thorough and careful 54-page report, Judge Freeman first determined that Belizaire had failed to establish RAV's liability for discriminatory conduct under Title VII, the ADEA, or the HRL.  (R. & R. 17-22.)  But because the substance of Belizaire's *pro se* Complaint raised wage claims and a claim for retaliatory discharge, the report proceeded to examine Belizaire's allegations under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. L. § 190, *et seq.* (*Id.* at 22-23.)  Ultimately, Judge Freeman concluded that Belizaire had sufficiently established RAV's liability for retaliatory discharge under the NYLL based on a theory that he was terminated after making an internal complaint concerning bounced checks and a request to be paid by certified check. (Id. at 27-28, 41-49).  The Judge Freeman also determined that Belizaire was entitled to damages for untimely paid wages under the FLSA.  (*Id.* at 38).  A copy of the Report and Recommendation was mailed to RAV. (*Id.* at 54).

This Court fully adopted Judge Freeman's Report and Recommendation (Dkt. No. 32), and thereafter directed the Clerk of the Court to enter judgment against RAV (Dkt. No. 35).  On April 15, 2015, the Clerk entered judgment in the amount of $65,859.55.  (Dkt. No. 37.)

## II.    Rule 60(b)(1) Motion

RAV's first appearance in this action comes in connection with the present motion.  On August 11, 2015, RAV filed a motion for relief from judgment under Rule 60(b)(1) of the Federal Rules of Civil Procedure, explaining that its "failure to appear in this matter and to defend the claims against it were the result of mistake, inadvertence, and/or excusable neglect." (Dkt. No. 42 at 1.)

RAV submits that upon receiving Belizaire's complaint, it "handed the complaint over to its counsel to deal with.  Counsel, however, did not take action on behalf of RAV and did not advise RAV to take action."  (Dkt. No. 43, "Mot. Set Aside J." 1.)  Hearing nothing more from its lawyer about the case, RAV contends that it reasonably believed the lawyer had disposed of the matter.  (*Id.* at 1-2.)

In support of its motion, RAV offers three affidavits from employees.  Operations Manager Terrance Greenidge states that after receiving the Complaint he gave it to David Fontaine to deliver to RAV's outside counsel, Ira Checkla. (Terrance Greenidge Decl. ¶ 11).  Mr. Greenidge explains that he heard nothing more "about the Complaint" until a Deputy Sheriff issued a Notice of Levy and Sale upon RAV in June 2015.  (*Id.* at ¶ 12.)  That Mr. Greenidge heard nothing about the litigation in the interim is "no[] surprise[]" because "managing legal matters was outside [his] responsibility."  (*Id.* at ¶ 11.)

In another affidavit, General Manager David Fontaine declares that he cannot specifically recall receiving the complaint or delivering it to Checkla, but that it would have been RAV's

regular practice to hand-deliver legal documents to Checkla.  (Fontaine Decl. ¶¶ 4-7).  Fontaine

explains that he "did not think it was odd that [he] did not hear back from Mr. Checkla

concerning the Complaint" because "Mr. Checkla did not always report back to me concerning

matters [Fontaine] brought to him" and "RAV had already received a favorable determination on

Sainslot Belizaire's discrimination complaint from the New York State Division of Human

Rights."  (*Id.* at ¶ 8.)

Finally, the affidavit of Payroll Manager Miriam Greenidge states that Belizaire was fired

for insubordination and for creating a disturbance at his workplace.  (Miriam Greenidge Decl.

¶ 10.)  Ms. Greenidge acknowledges that some of "Belizaire's paychecks were returned due to

insufficient funds," but she states that RAV never "failed to pay" all of Belizaire's wages. (*Id.* at

¶¶ 5-6.)

Concurrent with its Rule 60(b)(1) motion, RAV also filed an emergency motion to stay

execution of the judgment.  (Dkt. No. 47.)  On August 12, 2015, the Court granted a 10-day stay

of execution of judgment pending review of RAV's motion to set aside the judgment.  (Dkt. No.

53.)  On August 21, 2015 the Court extended that temporary stay pending further order.  (Dkt.

No. 54.)

## III.   Discussion

Rule 60(b)(1) provides that a court may relieve a party from a final judgment on account

of "mistake, inadvertence, surprise, or excusable neglect."  In the default judgment context,

courts consider "(1) whether the default was willful, (2) whether the defendant demonstrates the

existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will

cause the nondefaulting party prejudice." *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005)

(quoting *State Street Bank and Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67

(2d Cir. 2004).  *See, e.g., S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998); *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d. Cir. 1996); *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983).

## A.    Willfulness

Willfulness, in the context of a default, "refer[s] to conduct that is more than merely negligent or careless."  *McNulty*, 137 F.3d at 738.  Thus, a strategic decision to default does not constitute excusable neglect.  *See United States v. Erdoss*, 440 F.2d 1221,1223 (2d Cir. 1971). Default may also be considered "willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained."  *McNulty*, 137 F.3d at 738.  Courts have "rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney."  *United States v. Cirami*, 535 F.2d 736, 739 (2d Cir. 1976).  "In sum, where the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit."  *McNulty*, 137 F.3d at 740.

RAV offers no explanation for its counsel's failure to take action in this case.  Instead, RAV submits affidavits showing that it received the Complaint and that the Complaint was likely delivered to RAV's outside general counsel, Ira Checkla.  (Terrance Greenidge Decl. ¶ 11; Fontaine  Decl. ¶¶ 6-7).  No affidavit from Checkla has been provided.  *See McNulty*, 137 F.3d at 739 (upholding refusal to vacate default where the record contained "no affidavit from [defendant's counsel] offering any explanation for his conduct" leading to default).  RAV's submissions do not indicate whether any attempt has been made to seek Checkla's testimony. *See Cirami*, 535 F.2d at 739 (upholding refusal to vacate default where no testimony from former-counsel was offered and defendant did not describe "what efforts, if any, have been made

to elicit [former counsel's] testimony.")   Nor does RAV suggest an explanation for Checkla's

failure to act.  The declarations of Mr. Greenidge and Fontaine shed little light on the mystery,

and apparently neither man was in a position to be fully apprised of ongoing litigation involving

RAV.  (Terrance Greenidge Decl. ¶ 11; Fontaine Decl. ¶¶ 5, 8.)

RAV also fails to offer evidence of its own diligence in monitoring this case, aside from

delivering the initial Complaint to its counsel.  Notably, RAV makes no mention of the

communications mailed to it throughout the course of this litigation, detailed above, which

should have apprised RAV not only of the suit's continued existence, but of the fact that a

damages hearing following a default judgment was taking place.  (*See* Dkt. Nos 12, 16, 18, 27,

29.)  When the record is "bereft of any indication of client diligence," *Cirami*, 535 F.2d at 741,

"allowing a party to evade 'the consequences of the acts or omissions of [ ]his freely selected

agent . . . . would be wholly inconsistent with our system of representative litigation, in which

each party is deemed bound by the acts of his lawyer-agent."  *McNulty*, 137 F.3d at 739, quoting

*Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962); *see, e.g., Dominguez v. United States*,

583 F.2d 615, 618 (2d Cir. 1978) (upholding denial of a Rule 60(b) motion despite the

"inexcusable conduct of [the party's] counsel, since there is no particularized showing of

exceptional circumstances explaining [counsel's] gross negligence and no indication of diligent

efforts by [the party] to induce him to fulfill his duty.")

In support of its motion, RAV cites *Tripmasters, Inc. v. Hyatt International Corp.*, No. 82

Civ. 6792 (JFK), 1984 WL 1057 (S.D.N.Y. Oct. 23, 1984), for the proposition that a defendant's

misunderstanding about whether counsel is representing it in a lawsuit can be a basis for finding

excusable neglect.  But in that case the party seeking to set aside the default judgment submitted

affidavits showing that it had "regularly inquired about the status of the case and received assurances that its interests were being represented." *Id.* at *2.

On this record, the Court concludes that entry of default judgment was willful, as "the conduct of counsel or the litigant was egregious and [is] not satisfactorily explained." *McNulty*, 137 F.3d at 738.

### B.    Merits

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *Id.* at 740 (citation and internal quotation marks omitted); *see also Am. Alliance*, 92 F.3d at 61 ("A defense is meritorious if it is good at law so as to give the factfinder some determination to make.") (citation and internal quotation marks omitted).

The judgment entered in this case consists of damages for RAV's failure to pay Belizaire on a timely basis under the FLSA and damages for retaliatory discharge under the NYLL.  (Dkt. No. 37, "Clerk's J"; *see also* R. & R. 27-28, 37-38, 41-49).[3]  RAV concedes that at "various times . . . a few of Mr. Belizaire's paychecks were returned due to insufficient funds."  (Mot. Set Aside J. 4; *see* Miriam Greenidge Decl. ¶ 5.)  But RAV "reserves the right to challenge the number and timing of late wage payments."  (*Id.* at 11 n.1.)  On this record, RAV has not

---

[3] In its briefing and supporting declarations, RAV challenges the factual basis for Belizaire's claim that he was discriminated against on the basis of age and national origin (*see, e.g.,* Mot. Set Aside J. 4-6, 12-13), as well as Belizaire's claim that RAV failed to pay him in the correct amount (Miriam Greenidge Decl. ¶ 6).  But Belizaire was not awarded damages for unpaid wages or for discrimination on the basis of age or national origin.  (Clerk's J.)  Because the award Belizaire received — not the award he sought — is the only subject before this Court, there is no need to consider RAV's defenses to claims that have already been rejected.

presented evidence of facts that, if proven at trial, would constitute a defense to Belizaire's FLSA claim.

RAV does, on the other hand, offer facts which, if true, could constitute a defense to Belizaire's claim for retaliatory discharge. Belizaire was awarded damages for retaliatory discharge based on a theory that he was fired in response to an internal complaint — his December 30, 2011 decision to return three bounced checks to RAV and request to be paid by certified check. (*See* R. & R. 27-28). In response, RAV submits that Belizaire was fired for insubordination and disruptive behavior. (Miriam Greenidge Decl. ¶ 10; Mot. Set Aside J. 12, 14-16; *see also* Terrance Greenidge Decl. ¶¶ 4-7). If proven at trial, RAV's alternative explanation for Belizaire's termination could satisfy its burden of demonstrating a legitimate, nondiscriminatory reason for the termination, as is required under the NYLL. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011). In addition, RAV disputes Belizaire's account of the December 30 meeting and suggests that a demand for payment by certified check — absent more — would not constitute an internal complaint under the NYLL. (Mot. Set Aside J. 14-16). It is unnecessary to delve into the merits of these secondary arguments. The Court concludes that even though RAV has presented evidence of facts that, if proven at trial, would constitute a defense to its liability for retaliatory discharge, this factor is outweighed by the conclusion that RAV's default was egregious and remains unexplained.

### C.  Prejudice

The final issue to be considered is "whether and to what extent, vacating the default judgment will prejudice the non-defaulting party." *Green*, 420 F.3d at 110. Because granting a motion to vacate default necessarily results in some delay, "delay alone is not a sufficient basis for establishing prejudice." *Davis*, 713 F.2d at 916. "Rather, it must be shown that delay will

'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Id.* (quoting C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure: Civil,* § 2699 at 536–37 (1983)).

Belizaire has prosecuted this action as a *pro se* plaintiff for nearly three years.  Granting RAV's motion would undoubtedly frustrate Belizaire's effort to recover damages.  But on this record, there is little reason to conclude that a ruling in RAV's favor would result in prejudice beyond delay.

## IV.    Conclusion

By its terms, Rule 60(b)(1) provides that a court may relieve a party from a final judgment on account of "mistake, inadvertence, surprise, or *excusable neglect*." (emphasis added).  RAV's failure to appear in this action, whether attributable to the egregious conduct of its attorney or to RAV itself, lacks satisfactory explanation.  Moreover, RAV has not demonstrated the level of diligence in handling this case required to relieve a party of the burden of its counsel's omissions.  Although RAV has submitted facts that, if proven at trial, could constitute a defense to one of the claims against it, the degree of neglect in this case outweighs RAV's showing on the merits.  If a potentially meritorious defense and the absence of prejudice were enough to vacate a default judgment under these circumstances, then even defendants who made a strategic decision to default could routinely disrupt final judgments.  The interests of sound and efficient judicial administration warn against encouraging such willful and otherwise inexcusable defaults.

For the foregoing reasons, RAV's motion to set aside default judgment (Dkt. No. 42) and emergency motion to stay execution of judgment (Dkt. No. 47) are DENIED.  This Court's temporary stay of execution of judgment (Dkt. Nos. 53 & 54) is hereby VACATED.

The Clerk of the Court is directed to close the motions at docket numbers 42 and 47.

SO ORDERED.

Dated:  September 1, 2015
        New York, New York

                                    J. PAUL OETKEN
                               United States District Judge

COPY MAILED BY CHAMBERS TO *PRO SE* PLAINTIFF